1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BOW JAX, INC., an Idaho corporation<br><br>                              Plaintiff,<br><br>        v.<br><br>SIMS VIBRATION LABORATORY,<br>INC., and STEVEN C. SIMS, an<br>individual,<br><br>                              Defendants. | NO:  CV-09-047-RMP<br><br>ORDER ON BOW JAX'S MOTION<br>FOR SUMMARY JUDGMENT FOR<br>PATENT FALSE MARKING OF<br>NAVCOM, SIMS' CROSS MOTION,<br>AND SIMS' MOTION FOR<br>SUMMARY JUDGMENT<br>DISMISSING PLAINTIFF'S FALSE<br>MARKING CLAIMS AS A WHOLE |

Before the Court is (1) Bow Jax's Motion for Partial Summary Judgment for

Patent False Marking of Navcom (Ct. Rec. 119), (2) Sims' Cross Motion For

Summary Judgment for Patent False Marking of Navcom (Ct. Rec. 161), and (3)

Sims' Motion for Summary Judgment Dismissing Plaintiff's False Marking Claims

as a Whole (Ct. Rec. 97).

/ / /

/ / /

/ / /

ORDER ~ 1

**I.    Bow Jax's Motion for Partial Summary Judgment for Patent False Marking of Navcom (Ct. Rec. 119) and Sims' cross motion (Ct. Rec. 161).**

In its motion, Bow Jax has filed a false patent marking claim against Sims under 35 U.S.C. § 292.[1]  Under 35 U.S.C. § 292, it is unlawful to mark a product, or use in advertising, a patent number, or the word "patented," in connection with products that are not patented.  35 U.S.C. § 292(a).  The penalty for violating the statute is a fine of "not more than $500 for every such offense." *Id*.  Bow Jax claims an improper "mark" was used in many advertisements of Sims' products, specifically, that some advertisements of Sims' products describe Navcom as "Patented Navcom" despite the fact that Navcom is unpatented and has never been patented (Ct. Rec. 120 at 4).  Navcom is a proprietary substance developed by Sims that is "soft, amorphous, rubberlike viscoelastic material" (Ct. Rec. 120 at 4).  Navcom is used in nearly all of Sims' vibration dampening products (Ct. Rec. 120 at 4).  Sims has filed a cross motion for partial summary judgment on the Navcom false marking issue (Ct. Rec. 161).

---

[1] In February 2011 a northern district of Ohio court found this statute to be unconstitutional:  "[T]he qui tam provision of the False Marking Statute, 35 U.S.C. § 292(b) is unconstitutional under the Take Care Clause of the United States Constitution, U.S. Const. Art. II, § 3." *Unique Product Solutions, Ltd. v. Hy-Grade Valve, Inc.*, --- F.Supp.2d ----, 2011 WL 649998.

ORDER ~ 2

**Applicable Law**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *See Celotex Corp.*, 477 U.S. at 325.  The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'"  *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).  At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party.  If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that

ORDER ~ 3

fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e).

## 35 U.S.C. §292

The statutory provision at issue, U.S.C. § 292, is a criminal provision with a civil penalty that allows any person to bring suit against a person who marks an unpatented product as patented. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010). The applicable part of the statute at issue provides that:

> (a) . . .
> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public . . . [s]hall be fined not more than $500 for every such offense.
> (b) Any person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States.

35 U.S.C. § 292. False marking claims under 35 U.S.C. § 292 are subject to a five-year statute of limitations. 28 U.S.C. § 2462; *Arcadia Mach. & Tool Inc. v. Sterm, Ruger & Co.*, 786 F.2d 1124, 1125 (Fed. Cir.1986).

In *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005), the Federal Circuit noted that only one of its prior cases had substantively addressed the false marking statute. *Id.* at 1351. To succeed in a false marking claim, plaintiff is required to submit evidence showing that Defendant (1) falsely marked an unpatented product and (2) intended to deceive

the public.  *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).

In determining the proper intent to deceive, the *Clontech* court determined that a strict liability standard would be excessive.  *Id.* at 1352.  The court reasoned,

> [i]ntent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true.  A party asserting false marking must show by a preponderance of the evidence that the accused party did not have a reasonable belief that the articles were properly marked.

*Forrest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).  The burden of showing the intent to deceive the public is even greater:

> The bar for proving deceptive intent . . . is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine.  Because the statute requires that the false marker act "for the purpose of deceiving the public," a purpose of deceit, rather than simply knowledge that a statement is false, is required.

*Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010).

If a plaintiff meets this initial burden by showing the combination of false marking and knowledge that the marking was false it creates a rebuttable presumption of intent to deceive the public.  *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010); *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005).  Still, a defendant's knowledge that a marking is false is insufficient to prove intent if a defendant can prove that it did not

ORDER ~ 5

consciously desire the result that the public be deceived." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010).

In *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005)**,** the trial court found that experiments conducted in 2000 put the defendant on notice that certain molecular biology products were not covered under their patents.  *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005).  The circuit reversed the trial court finding that the 2000 experiments were not conclusive enough to put defendant on notice that its products were not covered by the patents.  *Id.* at 1355.

*In Forrest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295 (Fed. Cir. 2009), a court issued a summary judgment order that defined the scope of a patent and found that defendant's product was not covered by the patent that marked its products.  *Id.* at 1299.  After the entry of the summary judgment order, defendant then placed an order to its manufacturer for additional product marked with the patent number.  *Id.*  The court found that as of the date of the summary judgment order, the defendant had the requisite knowledge to know that the product was falsely marked and the court fined the defendant for the offense of false marking. *Id.*

In *Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010), the defendant had a patent that expired in 1988.  In 2000, the defendant became aware that it was

marking its products with an expired patent number. *Id.* at 1358. The defendant was in a difficult position because the machines that made the formerly patented product also marked the product and alteration of the machines would be costly and burdensome. *Id.* at 1359. After consulting with legal counsel, defendant developed a policy where machines that needed to be replaced due to wear and tear or damage would be replaced or modified to no longer mark the product. *Id.*

Additionally, in 2004, with the advice of counsel, the defendant put on its packaging, "[t]his product may be covered by one or more U.S. or foreign pending or issued patents. For details, contact www.solocup.com." *Id.* In determining whether defendant was liable for false marking, the Federal Circuit upheld the trial court's finding that the defendant had provided "credible evidence" that its purpose was not to deceive the public with either the expired patent markings or the 'may be covered' language, and [plaintiff] raised no genuine issue of material fact showing otherwise." *Id.* at 1363.

### Discussion

In the current case, Sims agrees with Bow Jax that Navcom has been improperly marked as "Patented Navcom" in advertising (Ct Rec. 120 at 7; Ct. Rec. 155 at 3). However, Sims contends that Sims is not responsible for the improper marking. Sims argues that although they employ graphic artists who are responsible for designing product packaging, Sims does not oversee dealer's

ORDER ~ 7

articles, webpages, flyers, catalogs or e-commerce business with regard to Sims products (Ct. Rec. 157 at 3).  Furthermore, Sims argues that Bow Jax has failed to provide sufficient evidence to raise a genuine issue of material fact that Sims wrote, had notice of, authorized, or had control over the complained third-party advertisements that use the term "patented Navcom" (Ct. Rec. 155 at 3).[2]

In its reply, Bow Jax modifies its position by claiming that resellers of Sims' products who use the phrase "patented Navcom" violate 35 U.S.C. § 292 and that such violation is legally attributable to Sims under partnership and agency theories. Specifically, Bow Jax claims that Sims actively works with its resellers in the preparation of advertisements as co-advertisers because Sims grants resellers access to downloadable media information, access to logos, trademarks and artwork (Ct. Rec. 186 at 3).  Bow Jax does not claim that any of Sims' work product contained the term "patented Navcom" (Ct. Rec. 186 at 3).  However, Bow Jax does claim that Sims is liable for false marking because of the number of years that retailers have used the term "patented Navcom" and because the size of the

---

[2] Bow Jax filed evidence that it found one incident of Sims using the term "patented Navcom" on a 2002 product insert.  However, Sims corrected this error before 2004 which was outside the five year statute of limitations (Ct. Rec. 178 at 4).  28 U.S.C. § 2462.

ORDER ~ 8

retailers, such as large multi-state businesses like Cabelas, precludes the possibility that Sims could fail to have knowledge of the advertisements (Ct. Rec. 186 at 8).

The language of the statute and limited case law on false marking clearly find liability against the actual person who is false marking: "[W]hoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public . . . ." 35 U.S.C. § 292. Bow Jax does not provide any authority to support that the false marking actions of a third-party are imputed to a patent owner. Similarly, no case law is cited for the proposition that patent owners have a duty to police third-parties for the false markings of a patent owner's products.

Bow Jax has failed to present evidence that Sims used the term "patented Navcom," with the intent to deceive the public (See Ct. Rec. 122). Accordingly, Bow Jax's motion is DENIED (Ct. Rec. 119) and Sims' cross motion is GRANTED (Ct. Rec. 161).

## II. Sims' Motion for Summary Judgment Dismissing Plaintiff's False Marking Claims (Ct. Rec. 97).

In addition to Sims' cross motion for summary judgment on false marking of the term "patented Navcom" (see *supra*), Sims also filed a motion for summary judgment on the entire false marking claim (Ct. Rec. 97). In the motion, Sims

ORDER ~ 9

responds product by product to Bow Jax's claim of false marking (Ct. Rec. 102 at 14; Bow Jax's list at Ct. Rec. 102-1).

## Applicable Law

As discussed *supra*, to succeed in a false marking claim, plaintiff is required to prove by a preponderance of the evidence that Defendant (1) falsely marked an unpatented product with the (2) intent to deceive the public. *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). If plaintiff proves that defendant did commit false marking and had knowledge that the marking was false, a rebuttable presumption is created that defendant had the intent to deceive the public. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1362 (Fed. Cir. 2010); *Clontech Laboratories, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1353 (Fed. Cir. 2005). A defendant can rebut the presumption of intent to deceive by proving that it did not consciously desire the result that the public be deceived. *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1363 (Fed. Cir. 2010).

## Discussion

In their motion, Sims admits to false markings, but claims that (1) they did not have knowledge of the false markings and (2) they lacked any intent to deceive the public. Specifically, Sims submitted declarations from the President of Sims Vibration Laboratory, Steven Sims; Sims' outside intellectual property counsel, Richard Multer; and Sims' president of marketing, Alan Lotton. The declarants

ORDER ~ 10

state that they had no knowledge of false marking of their products (Ct. Rec. 100-102).  Furthermore, the declarants explain that Sims has over 1,000 stock-keeping units ("SKUs"), that each SKU generally has its product's applicable patent number marked on the back of the product packaging, that many of the product packages were created with older packages as templates, and that Sims' counsel, Richard Multer, has been in poor health and not readily available for consultation (Ct. Rec. 100-102).  Allegedly, all of these factors led to some patented products having packaging that were falsely marked with incorrect patent numbers or falsely marked as "patent pending" (Ct. Rec. 100-102).

Sims filed a copy of a Bow Jax table of items that Bow Jax claims contain false markings (Ct. Rec 102-1).  Sims' evidence in the form of supporting declarations addresses some of Bow Jax's allegations, but not all of them (Ct. Rec. 100-102).[3]  Sims addresses the following items:

**Items 1-14**:  Sims claims that these items were marked with the wrong patent number (Ct. Rec. 102 at 14).  35 U.S.C. § 292 would not be applicable to articles covered under a valid patent that are marked with the wrong patent

---

[3] Sims does not address items 15-20, 22, 27-35, 37-41, 42-49, 50, 52, 53, 71, 78, 82, 83, 84-90, 92-102, 132-137, 140-146,149, and 150-154 (Ct. Rec. 102-1).

ORDER ~ 11

number. It requires that the article be unpatented ("whoever marks upon . . . any unpatented article . . ."). *Id.*

**Items 23, 24, 25, and 26:** Sims claims that these items marked with "Pat. Pending" are in fact covered under the '046 patent. As stated *supra*, under these facts 35 U.S.C. § 292 would not apply.

**Items Numbered: 21, 36, 51, 73, 74, 103-131; 138, 139, 147, & 148:** Sims states that Bow Jax alleged that these items were falsely marked because they were marked with 31 patents, three of which were expired (Ct. Rec. 102 at 15). Sims explains that after it received notice from Bow Jax about potential false marking claims, Sims worked with its patent attorney in developing the following language to insure conformity with the patent marking law (Ct. Rec. 102 at 15). The language states: "Patent Notice: The enclosed product may be covered by one or more of the following US and Foreign patents and/or by one or more pending patent applications . . ." (Ct. Rec. 102-2 at 54). This language appears to be modeled after the language in *Pequignot v. Solo Cup Co.*, 608 F.3d 1356 (Fed. Cir. 2010), which the Federal Circuit found did not violate § 292. *Id.* at 1359.

**Items Numbered: 54-59, 68:** Sims claims that these products were marked with the wrong patent (Ct. Rec. 102 at 15). As stated *supra*, under these facts 35 U.S.C. § 292 would not apply.

ORDER ~ 12

**Items Numbered: 60-67, 69:**  Sims also claims that these products were marked with the wrong patent (Ct. Rec. 102 at 15).  As stated *supra*, under these facts 35 U.S.C. § 292 would not apply.

**Items Numbered: 70,72, 75-77,79-81 & 91:**  Sims claims that these products were marked with the wrong patent (Ct. Rec. 102 at 16; Ct. Rec. 102 at 12).  As stated *supra*, under these facts 35 U.S.C. § 292 would not apply.

**Item Numbered: 91:**  Sims claims that this product was marked with "Patent Pending," when it is in fact covered by the '046 patent (Ct. Rec. 102 at 16).  35 U.S.C. § 292 would not be applicable to a patented article marked with the term patent pending.  It requires that the article be unpatented ("whoever marks upon . . . any unpatented article . . .").  *Id.*

In its response to the summary judgment motion, Bow Jax contends that it is undisputed that Sims falsely marked items and that it defies credulity to believe that Sims did not have knowledge of any of the false markings.  Bow Jax argues that it has met its burden to prove by a preponderance of the evidence that Sims intended to deceive the public, or alternatively, that there is a genuine issue of material fact that bars Sims' motion for summary judgment on all false marking claims.

Even though Bow Jax does not address Sims' defense item by item, and Sims did not provide explanations for each of the allegations raised by Bow Jax,

the Court finds that there is insufficient evidence to raise a genuine issue of material fact as to whether Sims falsely marked its products with the intent to deceive the public. Viewing the evidence in the light most favorable to the nonmoving party, Bow Jax, the Court finds that the false markings made by Sims appear to be nothing more than mistakes made by employees.  The Court notes that there are numerous, uncontested examples of Sims employees applying the wrong patent number or the term "Pat. Pending" to products that result in Sims' economic disadvantage.  Assuming *arguendo,* that Bow Jax met its burden that Sims had knowledge of the false marking on its products, Sims' incorrect patent markings against its own economic interest would weigh against a finding of intent to deceive the public. Therefore, the Court finds that Bow Jax's false marketing claim is factually unsupported.

Accordingly, **IT IS HEREBY ORDERED:**

1. Bow Jax's Motion for Partial Summary Judgment for Patent False Marking of Navcom (**Ct. Rec. 119**) is **DENIED**.

2. Sims' Cross Motion For Summary Judgment form Patent False Marking of Navcom (**Ct. Rec. 161**) is **GRANTED**.

/ / /

/ / /

ORDER ~ 14

**3.** Sims' Motion for Summary Judgment Dismissing Plaintiff's False Marking

Claims as a Whole (**Ct. Rec. 97**) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel.

**DATED** this 6th day of April, 2011.

_____s/ Rosanna Malouf Peterson_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

ORDER ~ 15