UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BOW JAX, INC., an Idaho corporation,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SIMS VIBRATION LABORATORY, INC., and STEVEN C. SIMS, an individual,<br><br>　　　　Defendants. | NO: CV-09-047-RMP<br><br>ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. |

Before the Court is Sims' Motion for Summary Judgment of Infringement of Patent No. 6,237,584 (the "'584 patent") (Ct. Rec. 114) and Bow Jax's Motion for Declaration of Invalidity of Claims 2, 3, 8, and 9 of the '584 patent (Ct Rec 124).

**A. Sims' Motion for Summary Judgment of Infringement of the '584 Patent (Ct. Re. 114).**

Both parties agree that after the *Markman* Order the remaining disputes for the '584 patent center around claims 2, 3, 8 & 9 and whether these claims are infringed by the following Bow Jax products:

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 1

1. The Original "Slipjax" String Silencer.

2. The New "Slipjax" String Silencer.

3. The Original "Super Slipjax" String Silencer.

4. The New "Super Slipjax" String Silencer.

(Ct. Rec. 115 at 3). Bow Jax created the New Slipjax String Silencer after receiving a cease and desist letter from Sims (Ct. Rec. 117-1 at 17-19; Ct. Rec. 149 at 4).

## Applicable Law

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. If the nonmoving party produces evidence that contradicts evidence produced by the moving party, the court must assume the truth of the nonmoving party's evidence with respect to that fact. *T.W. Elec. Service, Inc.*, 809 F.2d at 631. The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(a).

Patent infringement analysis involves two steps: claim construction and application of the construed claim to the accused process or product. *See Markman v. Westview Instruments*, Inc., 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Claim construction is a question of law and application of the claim to the accused product to determine infringement is a question of fact. *See Mannesmann Demag Corp. v. Engineered Metal Prods. Co.*, 793 F.2d 1279, 1282 (Fed.Cir.1986); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Literal infringement is "properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai,* at 1353.

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 3

**Discussion**

## I. Claim 2 and Claim 8

Through statements in depositions, Bow Jax admitted that all of the elements of claims 2 and 8 are present in all of the accused string silencer products with one exception: Bow Jax states that the accused string silencer products do not include the following claim element: "said arms being integrated with the center segment at opposite ends of said segment" (Ct. Rec. 115 at 6). The Court construed this claim element in its *Markman* Order:

> The Court finds that "said arms being integrated with the center segment at opposite ends of said segment" means "the first and second arms are combined with the center segment so that the first arm is on a n opposite end and at an equal angle in the opposite direction to the second arm"

(Ct. Rec. 71 at 26). It is Sims' contention that all of Bow Jax's string silencers include this element (Ct. Rec. 115 at 5).

Bow Jax claims that their silencer arms are not on the ends of the center segment, but rather on the side of the center segment (*see* Ct. Rec. 147 at 5-6; Ct. Rec. 149-1 at 9). Bow Jax's argument requires that the silencer be viewed as having two ends and two sides. Bow Jax argues that it should survive summary judgment on the issue because (1) whether the silencer arms are on the side is an

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 4

issue of fact, and (2) Bow Jax has proffered a declaration from Stuart Wright, a person skilled in the art, to raise a genuine issue of material fact.[1] After establishing his credentials as a person having ordinary skill in the art, Mr. Wright states: "The arms of the Bow Jax string silencers come out of the sides as illustrated, not the ends of the center segment" (Ct. 149 at 3).

The Court finds that a reasonable jury could find that the Bow Jax arms connect to the string silencer on the center segment's side, not the center segment's ends as alleged by Sims. Therefore, Bow Jax has raised a genuine issue of material fact that should be determined at trial.

## II. Claim 3 and Claim 9

The remaining dispute in claims 3 and 9 is whether Bow Jax's string silencers include the following claim element:

> there being complimentary protrusions on opposite sides of the silencer for trapping the first and second bow string elements on opposite sides of the silencer and thereby securing the silencer between and to said elements.

The Court's Markman Ruling at page 28 lines 25-28, page 29, lines 1-3, states:

---

[1] Bow Jax offered declarations by both Mr. Stuart Wright, the President of Bow Jax, and by Gerard J. Carlson. The Court struck the declaration of Mr. Carlson in its *Daubert* order and does not consider his declaration as support of Bow Jax's position.

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 5

For the above reasons, the Court concludes that "complementary protrusions on opposite sides of the silencer" means "at least two complementary protrusions on both surfaces (front and back) of the silencer."

Bow Jax admitted through statements in depositions that the Original Slipjax String Silencer and the Original Super Slipjax String Silencer include all the claim elements of claim 3 and claim 9. Specifically, Bow Jax's president, Stuart Wright, who was designated to testify for Bow Jax under Fed. R. Civ. P. 30(b)(6), acknowledged that these devices had protrusions (Ct. Rec. 183-1 at 9).[2] Accordingly, the Court finds that the Original Slipjax String Silencer and the Original Super Slipjax String Silencer have protrusions.

Sims has raised the remaining issue: whether the New Slipjax String Silencer and New Super Slipjax String Silencer include complimentary protrusions.

---

[2] In oral argument, Bow Jax argued that Mr. Wright, who was designated to testify for Bow Jax under Fed. R. Civ. P. 30(b)(6), was a layperson untrained in the art, and therefore the Court should strike his statements. However, Mr. Wright's declaration defines himself as one "skilled in the art of string silencers" from education and experience (Ct. Rec. 149 at 2). The Court will consider Mr. Wright's Fed. R. Civ. P. 30(b)(6) admissions.

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 6

Sims argues that Bow Jax's New Slipjax String Silencer and New Super Slipjax String Silencer still have protrusions at the ends and the sides of the silencers' bodies.³ Sims also argues that Bow Jax has admitted to these protrusions, which Bow Jax refers to as "notches" (Ct. Rec. 115 at 8). However, in the evidence submitted by Sims, Bow Jax only acknowledges notches on the ends of the silencer's body, not on the sides of the silencer's body (Ct Rec. 115 at 8).

In its response, Bow Jax argues that the word "protrusion" may need to be defined by the Court (Ct. Rec. 147 at 10). Bow Jax also tries to limit the word "protrusions" to that of "bosses," since that term also was used in the specification (Ct. Rec. 147 at 11).

The term "protrusions" does not need to be construed by the Court. "[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." *O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.*, 521 F.3d. 1351, 1362 (Fed. Cir. 2008). Additionally, to limit the term "protrusion" to that of "boss" would be inappropriate.

> The terms used in the claims bear a 'heavy presumption' that they mean what they say and have the ordinary meaning that would be

---

³ Images of a New Slipjax String Silencer are at Ct. Rec. 115 at 5-7, and Super Slipjax String Silencer at Ct. Rec. 117-1 at 19.

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 7

> attributed to those words by persons skilled in the relevant art. . . . Moreover, unless compelled otherwise, a court will give a claim term the full range of its ordinary meaning as understood by persons skilled in the relevant art.

*Texas Digital v. Telegenix, Inc.*, 308 F.3d 1193, 1201 (Fed. Cir. 2002) (citations omitted). Nevertheless, the Court agrees with Bow Jax that whether or not the notch at the end of the silencer is a protrusion is a question of fact for trial because a reasonable jury could find that it is not a protrusion. *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

**III. Issue of Permissive Use**

In Bow Jax's response to Sims' motion for summary judgment on the issue of protrusions on the New Slipjax and New Super Slipjax, Bow Jax makes one additional argument against a finding of infringement: permissive use (Ct. Rec. 147 at 8). Bow Jax contends that Sims' general counsel, Mr. Mendoza, agreed that if Bow Jax changed its original silencer molds and removed the protrusions (or ridges) of the Original Slipjax and Original Super Slipjax, Sims would be satisfied and dismiss its infringement claim. Bow Jax claims that it even had drawings of the New Slipjax and New Super Slipjax sent to Mr. Mendoza and that Mr. Mendoza approved them (Ct. Rec. 149 at 6). Without offering authority in support of its position, Bow Jax contends that Sims is precluded from an infringement

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 8

claim on the issue because it has been resolved by oral contract. Sims does not dispute any of Bow Jax's facts on the issue of permissive use.

Given that the Court already has determined that there are genuine issues of material fact regarding whether Bow Jax's New Slipjax String Silencer and New Super Slipjax String Silencer include protrusions, the Court will not address Bow Jax's alleged permissive use defense.

**IV.  Sims' Objection to Bow Jax's Expert**

The Court notes that Sims objects to one of Bow Jax's declarations on the grounds that the declarant, Mr. Gerard Carlson, was not designated as an expert on non-infringement of the '584 patent (Ct. Rec. 182 at 5; Ct. Rec. 183 at 2). The Court has determined in its *Daubert* ruling that Mr. Carlson is not qualified to testify as an expert. Therefore, the Court finds Sims' objection to Mr. Carlson in this motion is moot.

**B. Bow Jax's Cross Motion for Declaration of Invalidity of Claims 2, 3, 8, and 9 of the '584 Patent (Ct Rec 124).**

In its summary judgment motion, Bow Jax requests a declaration of invalidity for the same claims of the '584 patent that are discussed *supra* (claims 2, 3, 8, & 9). In their response to the motion, Sims objects to the motion on several grounds including that Bow Jax's first amended complaint does not plead invalidity of the '584 patent and that no expert opinions have been submitted by

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 9

Bow Jax regarding the '584 patent (Ct. Rec. 168 at 4). Bow Jax does not address these issues in its reply (Ct. Rec. 191).

Invalidity is normally pleaded in a complaint or as a defense in an answer.[4] The Court agrees with Sims that Bow Jax did not plead invalidity on the '584 patent in its amended complaint (Ct. Rec. 88). Bow Jax filed an answer to Sims' counterclaim on December 30, 2010 (Ct. Rec. 201). In that document, Bow Jax claimed an invalidity defense (Ct. Rec. 201 at 4).[5] However, Bow Jax's filing was

---

[4] *Green Edge Enterprises, LLC v. Rubber Mulch Etc., LLC,* 620 F.3d 1287, 1292 (Fed. Cir. 2010)( defendant "counterclaimed for a declaratory judgment of noninfringement and invalidity of the . . . mark . . . ."); . *In re Technology Licenseing Corp.*, 423, F.3d 1286, 1291 (Fed. Cir. 2005)(invalidity can be brought as a claim or asserted as a defense);*see Toro Co. V. Deere & Co.,* 355 F.3d 1313, 1322 (Fed. Cr. 2004) (Federal Circuit considers a party's affirmative defenses to defenses pleaded in its answer).

[5] Bow Jax's broadly claims "U.S. Patent Nos. 5,362,046, 6,298,842, and 6,237,584 are invalid and void for failure to comply with each of the provisions of 35 U.S.C. §§ 101, 102, 103, and 112" (Ct. Rec. 201 at 4).

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 10

more than two months tardy,[6] and it was filed only after Sims' objection to the lack of notice and after the replies were filed in the current summary judgment motions.

Despite these procedural defects, the Court considers Bow Jax's motion and finds that it fails on the merits.

## Applicable Law

### Anticipation and Obviousness

Invalidity of a patent on the basis that it was anticipated by a previous patent must be proved by clear and convincing evidence. *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048 1994, 1052 (Fed. Cir. 1994). Anticipation under 35 U.S.C. § 102(b) "requires the presence in a single prior art disclosure of each and every element of a claimed invention and is a question of fact." *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048 1994, 1052 (Fed. Cir. 1994). Issues of material fact as to whether methods were

---

[6] Bow Jax's first Amended Complaint was filed August 31, 2010 (Ct. Rec. 88). Sims filed an answer and counterclaim on September 20, 2010 (Ct. Rec. 92). Under Fed. R. Civ. P. 12(a)(1)(B) Bow Jax was required to "serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim. Bow Jax filed its answer on December 30, 2010 (Ct. Rec. 201).

inherently present in prior art can preclude summary judgment on the question of whether a later patent is invalid as anticipated. *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1320 (Fed. Cir. 2004).

Section 103 of The Patent Act prohibits issuance of a patent when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *KSR Intern. Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007). An issued patent is presumed valid. Accordingly, a party seeking to challenge the validity of a patent based on obviousness must present clear and convincing evidence that the invention described in the patent would have been obvious to a person of ordinary skill in the art at the time the invention was made. *Pfizer, Inc. v. Apotex, Inc*., 480 F.3d 1348, 1359-60 (Fed.Cir.2007).

The Supreme Court repeatedly has cautioned that a "patent for a combination which only unites old elements with no change in their respective functions . . . obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men." *Id.* at 1739.

In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Supreme Court set out a framework for applying the statutory language of § 103:

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 12

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Intern. Co. v. Teleflex Inc.,* 550 U.S. 398, 406 (2007).

The Supreme Court emphasizes that the sequence of the questions can be reordered in any particular case and a court may look at secondary considerations that would prove instructive. *KSR Intern. Co. v. Teleflex Inc.,* 550 U.S. 398, 407-15 (2007). The Court of Appeals for the Federal Circuit developed a test called the "teaching, suggestion, or motivation" test ("TSM test"), under which a patent claim only is proved obvious if 'some motivation or suggestion to combine the prior art teachings' can be found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." *Id.* In *KSR*, the Supreme Court did not overrule the TSM test, but did find that the Court of Appeals failed to properly apply the test in that case. *Id.* at 1741.

## Discussion

In its motion, Bow Jax contends that claims 2 and 8 of the '584 patent are clearly anticipated by U.S. Pat No. 3,612,029 (the "*Carroll* patent"), and thus invalid under 35 U.S.C. § 102(b) (Ct. Rec. 125 at 18). In addition to being

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 13

anticipated by *Carroll*, Bow Jax further contends that claims 3 and 9 of the '584 patent have an additional limitation of using a protrusion to better secure the silencer that is obvious and therefore claims 3 and 9 are invalid under 35 U.S.C. § 103 (Ct. Rec. 125 at 18).

Bow Jax breaks down its contentions into three arguments for invalidity: (1) a relevant prior art patent, the *Carroll* patent, was not considered by the United States Patent and Trademark Office during the primary examination ("USPTO"); (2) USPTO's applicable rules that evaluated the '584 patent have been discredited; and (3) the wrong claim construction was used by the USPTO when it granted the '584 claims (Ct. Rec. 24 at 4-5). Bow Jax submits no expert testimony or other evidence in support of its position.

The Court will address Bow Jax's arguments in order. (1) Bow Jax's argument that the *Carroll* patent was not considered by the USPTO during the primary examination is incorrect. As Sims points out, the Patent Office records reflect that prior to issuing the '584 patent, the Patent Examiner reviewed the *Carroll* patent during the '584 examination as indicated by the examiner's placement of his initials next to the name of the *Carroll* patent (Ct. Rec. 170-2 at 28).

(2) Bow Jax's argument that the applicable rules used to evaluate the '584 patent have been discredited is incorrect. Bow Jax relies on *KSR Intern. Co. v.*

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 14

*Teleflex Inc.,* 550 U.S. 398, 406 (2007), for support of this position, but in *KSR,* the Supreme Court did not overrule the TSM test, but merely found that the lower court failed to properly apply the test in that case. *Id.* at 1741.

(3) Bow Jax argues that claims 2 and 8 of the '584 patent are invalid because they were anticipated by *Carroll* (Ct. Rec. 125 at 13). However, in order for § 102(b) anticipation to apply, the presence in a single prior art must include disclosure of each and every element of a claimed invention, and anticipation is a question of fact. *Electro Medical Systems, S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048 1994, 1052 (Fed. Cir. 1994). The '584 patent is different from *Carroll* in that the silencer is made from an elastomeric material rather than synthetic plastic (Ct. Rec. 125 at 13).

Although Bow Jax may argue that the change from plastic to elastomeric material is obvious, the Supreme Court has stated that "when a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield a predictable result." *KSR Intern. Co. v. Teleflex Inc.,* 550 U.S. 398, 416 (2007).

Without an expert opinion stating that the use of elastomeric material only yielded a predictable result, Bow Jax fails to meet the clear and convincing burden.

ORDER ON SIMS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF THE '584 PATENT AND BOW JAX'S MOTION FOR DECLARATION OF INVALIDITY OF CLAIMS 2, 3, 8, 9 OF THE '584 Patent. ~ 15

Therefore, Bow Jax's motion for invalidity fails.

Accordingly, **IT IS HEREBY ORDERED:**

1. Sims' Motion for Summary Judgment of Infringement of the '584 Patent (**Ct. Re. 114**) is **GRANTED IN PART AND DENIED IN PART**.

2. Bow Jax's Motion for Declaration of Invalidity of Claims 2, 3, 8, and 9 of the '584 Patent (**Ct Rec 124**) is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 6th day of April, 2011.

       *s/ Rosanna Malouf Peterson*
      ROSANNA MALOUF PETERSON
      Chief United States District Court Judge